## KRAMER v. LINZ et al.
### No. 3021.

Court of Civil Appeals of Texas. El Paso.
June 28, 1934.

W. C. Gowan and McCormick, Bromberg, Leftwich & Carrington, all of Dallas, for appellant.

Wm. H. Flippen and Tom Fletcher, both of Dallas, for appellees.

PELPHREY, Chief Justice.

On the 11th day of February, 1911, the following instrument was executed by Edgar L. Pike and appellant:

"State of Texas, County of Dallas.

"Whereas, Albert Linz, has subscribed to 1 share of stock in City Investment Company, a corporation organized for the purpose of buying and selling real estate and kindred purposes at the solicitation of Edgar L. Pike and Irvin L. Kramer,

"Now, Therefore, in consideration of such subscription, the said Pike and Kramer hereby indemnify the said Albert Linz against the loss of the amount so invested or any part thereof."

A certificate of stock was issued for one share of stock to appellee on March 10, 1911, for which he paid the sum of $1,000.

Appellee filed this suit in November, 1929. The original petition is not included in the record, but in his second amended petition Irvin L. Kramer and Mrs. Jessica S. Pike, executrix of the estate of Edgar L. Pike, deceased, are named as defendants.

Appellee alleged that Kramer and Pike were instrumental in promoting and forming the City Investment Company; that they were desirous of obtaining an investment by him in the corporation; that, upon being approached by them, he declined to invest therein; that Pike and Kramer each and both prevailed upon him to make the investment, stating that, although they had purchased property as individuals, yet their financial difficulties, which were then evident, could be relieved by the purchase of shares of stock in the corporation that had been formed with the properties as its capital, if appellee and others would subscribe thereto; that finally the said Pike and Kramer suggested that, if he would subscribe to the stock, they would personally indemnify him against any loss by reason of such investment; and that, because of such agreement and the execution of the above-quoted indemnity agreement, he invested the sum of $1,000 in one share of stock in the corporation.

Irvin and Mrs. Pike answered by general demurrer, general denial, and answered specially setting up, first, that appellee had paid only $1,000 for the stock, that he had received from the corporation sums aggregating $1,200 in dividends; that, by reason thereof, the indemnity agreement had been satisfied and discharged; second, that, if the contract of indemnity was valid, then it was not of indefinite duration, but could exist for only a reasonable time after its execution, that within a period of seven or eight years after the execution of the indemnity agreement appellee could have disposed of his stock for more than its purchase price; third, that the indemnity agreement was given after appellee had already subscribed for the stock, and the agreement therefore lacked consideration; and, fourth, that appellee's stock had lost its value five years prior to the foreclosure alleged by him and his claim was therefore barred by the statute.

Appellee in his supplemental petition specially excepted to those portions of the answer setting up the receipt by appellee of the $1,200 in dividends and the allegations that the indemnity agreement was to exist only for a reasonable time.

These exceptions were sustained and the allegations stricken.

The following special issues were submitted to the jury:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the Plaintiff, Albert Linz, would not have purchased the share of stock in question unless Irvin L. Kramer and Edgar L. Pike agreed to indemnify him against loss of the purchase price of said share of stock?"

"Special Issue No. 2: Do you find from a preponderance of the evidence that Albert Linz had agreed to purchase the share of stock in question prior to the time that Irvin L. Kramer and Edgar L. Pike had agreed to indemnify him against loss of the purchase price of said share of stock?"

Special Issue No. 1 was answered in the affirmative and Issue No. 2 in the negative.

Upon these findings the court rendered judgment in favor of appellee and against Irvin L. Kramer for $1,000 and interest thereon at 6 per cent. per annum from the 5th day of February, 1929. Kramer has appealed.

Opinion.

Kramer and Mrs. Pike alleged in their answer:

"For further answer herein, if one be necessary, they show that the plaintiff only paid $1000.00 for the stock subscribed and that he received back from the City Investment Company, the corporation in which he subscribed for said share of stock, sums aggregating $1200.00 dividends on said stock subscribed, on the following dates and in the following amounts: (Here follows list of dividends received the first one being on June 18, 1915, and the last one on November 24, 1926.)"

"As a result of said payments above set out, even if, Edgar L. Pike and Irvin L. Kramer were ever liable under said purported contract of indemnity, and this the defendants expressly deny, said purported contract was in all-things discharged by the payments made to plaintiff, and as a result thereof, the defendants herein are not liable to the plaintiff in any amount."

As said before, an exception was sustained to these allegations and they were stricken from the answer.

The court's action in sustaining the exception is made the basis of appellant's first assignment of error; his contention being that the amounts received by appellee as dividends should be considered upon the question as to whether he had sustained a loss of the amount invested.

"Unless liquidated damages have been provided for in the indemnity contract, an indemnitee who has suffered loss may recover only to the extent of injury or damage actually proved." 23 Tex. Jur. § 16, p. 535.

"As a general rule, in suits on ordinary contracts of indemnity, the measure of damages is the loss actually sustained or the amount actually paid. * * *" 31 C. J. § 28, p. 434.

This being true and the rule of construction of indemnity contracts being that they must be strictly construed in favor of the indemnitor, we are of the opinion that the amounts received by appellee as dividends should have been taken into consideration in determining whether or not he had sustained a loss and, if so, the amount thereof.

In Bullock v. Lewis, 22 Colo. App. 449, 125 P. 840, a stockbroker agreed with the purchaser of stock that "he would see her out in her purchases, and see that she received her money with good interest thereon, and that she should not lose anything by her said investment."

The Court of Appeals of Colorado, in its discussion had the following to say: "The contract being one of indemnity, the plaintiff must show a loss, and the extent of recovery would be the loss sustained measured by the difference between the highest value of the stock within a reasonable time after the purchase, and the amount paid for the stock with interest added, *less any dividends received thereon* [italics ours], as shown by the evidence."

While this case is the only one to which we have been referred dealing directly with the question here involved, it appears to be a well-considered opinion, and is, we think, in accord with the doctrine that an indemnitee can recover only the amount he is actually damaged.

We also agree that the trial court erred in sustaining the exception to the allegations of the defendants that the contract was not of indefinite duration but was to be performed within a reasonable time after its execution. In the contract here no time for performance was specified, and the rule is that in such case the law implies that it will be performed within a reasonable time. 10 Tex. Jur. § 237, p. 413, and authorities cited.

In Bullock v. Lewis, supra, relative to this question, the court, after holding that the damage should be measured by the difference between the highest value of the stock within a reasonable time after the purchase, said: "Such reasonable time to be determined by the jury under appropriate instructions. * * *"

Another case involving somewhat similar facts was before the First Department of the Appellate Division of the Supreme Court of New York, Norris v. Reynolds, 131 App. Div. 818, 116 N. Y. S. 106, 107.

There a promoter agreed with a prospective buyer of stock in a cemetery association, thus: "I will guarantee your money, principal and interest, for whatever amount you invest in the stock. You will have my personal guarantee."

The court, in passing upon when the suit might be brought on such agreement, said: "Of course, the plaintiff is not obliged to wait before bringing his action against the defendant on the contract of indemnity until it is finally learned whether the cemetery project is successful or not. Nor do we hold that it is necessary for him to sell his stock or his rights in the indebtedness of the cemetery association. In order, however, to call upon the defendant upon his contract of indemnity against loss, he must show by competent evidence that, after the lapse of a reasonable time, his stock or the property right represented by it has become worthless or partially worthless."

Appellant's third proposition, in which he asserts that he was entitled to an instructed verdict because there was not sufficient evidence showing that the agreement to indemnify was given before appellee subscribed for the stock, is not tenable.

Appellee's testimony, we think, shows that

he was given the agreement before he agreed to purchase the stock. It certainly was sufficient to raise the issue submitted.

Appellee's suit was not based upon fraud or misrepresentations; therefore the inquiry made in special issue No. 1 as to whether appellee would or would not have purchased the stock without the indemnity agreement was immaterial.

The question of when appellee agreed to purchase the stock in relation to the making of the agreement is taken care of by issue No. 2.

Propositions 5 and 6 are not well taken.

The judgment of the trial court is reversed, and the cause remanded to be retried in accordance with the views heretofore expressed.